

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

FILED 08 FEB 12 PM 12:18

| | |
|---|---|
| **UNITED STATES OF AMERICA,**  <br><br>Plaintiff,<br><br>v.<br><br>**1. Jose Luis MORALES-Sevilla,**<br>**2. Jesus Ruben SORIA-Sainz**<br><br>Defendant(s) | Magistrate Case No.<br><br>**'08 MJ 0404**<br><br><u>COMPLAINT</u> <u>FOR</u> <u>VIOLATION OF</u>:<br><br>Title 8 U.S.C., Sec. 1324 (a)(1)(A)(ii)<br>Transportation of Illegal<br>Aliens<br><br>Title 8 U.S.C., Sec. 1324 (a)(2)(B)(iii)<br>Bringing in Illegal Aliens Without<br>Presentation |

The undersigned complainant, being duly sworn, states:

<u>COUNT 1</u>

On or about **February 10, 2008,** within the Southern District of California, defendant **Jose Luis MORALES-Sevilla** with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens, namely, **Jorge Armando SOLIS-Lopez, Oscar SALAZAR-Guerrera, and Luz MADRIGAL-Blancarte** had come to, entered and remained in the United States in violation of law, did transport and move, said aliens within the United States in furtherance of such violation of law; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii).

<u>COUNT 2</u>

On or about **February 10, 2008,** within the Southern District of California, defendant **Jesus Ruben SORIA-Sainz**, with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens, namely, **Jorge Armando SOLIS-Lopez, Oscar SALAZAR-Guerrera, and Luz MADRIGAL-Blancarte** , had not received prior official authorization to come to, enter and reside in the United States, did bring to the United States said aliens and upon arrival did not bring and present said aliens immediately to an appropriate immigration officer at a designated port of entry; in violation of Title 8, United States Code, Section 1324(a)(2)(B)(iii).

And the complainant further states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

SIGNATURE OF COMPLAINANT
James Trombley
Senior Patrol Agent

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS **12th** DAY OF **February, 2008**

Anthony J. Battaglia
UNITED STATES MAGISTRATE JUDGE

CONTINUATION OF COMPLAINT:
Jose Luis MORALES-Sevilla
Jesus Ruben SORIA-Sainz

## PROBABLE CAUSE STATEMENT

Furthermore, the complainant states that **Jorge Armando SOLIS-Lopez, Oscar SALAZAR-Guerrera, and Luz MADRIGAL-Blancarte,** are citizens of a country other than the United States; that said aliens have admitted that they are deportable; that their testimony is material, that it is impracticable to secure their attendance at the trial by subpoena; and they are material witnesses in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144.

On February 10, 2008, Supervisory Border Patrol Agent R. Castillo and Border Patrol Agent F. Fiscal were assigned to the Interstate 8 westbound Border Patrol Checkpoint, near Pine Valley, California. At approximately 8:20 a.m., Agent Fiscal was working in the primary position at the Interstate 8 Checkpoint when he received a citizen's report of a gray minivan that had made a sudden u-turn at the beginning of the cone pattern leading up to the checkpoint. The citizen stated that the van was continuing eastbound in the westbound lanes. Agents Castillo and Fiscal responded to the location of the citizen's report in a fully marked border patrol vehicle.

At approximately 8:30 a.m., Agents Castillo and Fiscal located a gray Ford Aerostar approaching the Buckman Springs On-Ramp to the Interstate 8 westbound lanes, driving eastbound against the flow of traffic. When the driver of the vehicle noticed their marked agency sedan approaching, the driver veered off the road onto the shoulder of the Buckman Springs Road On-Ramp to the westbound lanes and several individuals exited the vehicle and ran. After a brief search of the area, agents were able to locate seven subjects. Agents Castillo and Fiscal identified themselves as United States Border Patrol Agents and questioned each subject as to their citizenship. All subjects freely stated to being citizens and nationals of Mexico without any legal documents that would allow them to enter or remain in the United States legally.

During the period of time that Agents Castillo and Fiscal were apprehending the seven illegal aliens, an additional citizen report was received by Agents at the Interstate 8 Checkpoint of a subject that was observed running south across the lanes of traffic of Interstate 8 toward Old Highway 80. Agent Castillo contacted Border Patrol Communications and requested the assistance of Customs and Border Protections (CBP) Air Support to assist in locating the individual. Agent Castillo arrived to the location of the citizen report and followed fresh footprints. Agent Castillo and CBP Air Support searched for the missing individual, but their efforts proved to be unsuccessful. According to brief field interviews of the seven illegal aliens apprehended, the driver was the only individual that had absconded. The driver was described as wearing a white t-shirt. All seven subjects were placed under arrest and taken initially to the Campo Border Patrol Station and then to El Cajon Station for processing.

Later on in the day of February 10, 2008, Senior Border Patrol Agent B. Blanchard was conducting interdiction operations on Interstate 8 east of the Interstate 8 westbound Border Patrol Checkpoint near Pine Valley, California. Agent Blanchard was operating in plain street clothing and was driving an unmarked agency vehicle.

At approximately 3:00 p.m., Agent Blanchard was driving westbound on Old Highway 80, approximately fifty yards west of the Old Highway 80/Old Buckman Springs Intersection when he observed a single Hispanic male sitting on a rock off in the brush south of Old Highway 80 wearing a white t-shirt. Agent Blanchard parked his Agency vehicle and approached the individual on foot. Upon closer inspection of the individual, he noticed that the subject appeared to be tired and wearing dirty clothing. Agent Blanchard

**CONTINUATION OF COMPLAINT:**
**Jose Luis MORALES-Sevilla**
**Jesus Ruben SORIA-Sainz**



identified himself as a United States Border Patrol Agent both verbally and with his issued Border Patrol Badge and questioned the subject as to his citizenship. The subject, later identified as a defendant, Jose Luis MORALES-Sevilla, claimed to be a citizen and national of Mexico not be in possession of proper immigration documentation that would enable him to enter or remain in the United States legally. Agent Blanchard arrested the MORALES and transported him to the Interstate 8 Border Patrol Checkpoint.

At the Interstate 8 Checkpoint, Border Patrol Agent J. Duenas began to process the MORALES. Agent Duenas recalled that the driver's physical description from the Aerostar van earlier in the day. Agent Duenas performed a brief questioning of MORALES. MORALES freely admitted to being the driver of the very same smuggling event that occurred at 8:30 am earlier that day. MORALES and all seven of the illegal aliens from the Aerostar van were transported to the El Cajon Border Patrol Station for processing.

### DEFENDANT STATEMENT: Jose Luis MORALES-Sevilla

MORALES was read his Miranda rights and was willing to answer questions without an attorney present.

MORALES stated that he entered the United States on February 10, 2008, at approximately 7:00 a.m. by crossing the high steel border fence near the Tecate, California Port of Entry. The group MORALES crossed with consisted of nine people including a foot guide. MORALES made arrangements in Tecate, Mexico, to be smuggled into the United States, and transported to Los Angeles, California, for a fee of $3,000. After crossing the United States/Mexico International Border, MORALES and the group went to a house where they waited for approximately two hours. The smuggler then arrived in a gray minivan and said that he was unable to find a driver for the minivan. The smuggler told the MORLAES that if he drove the minivan, he would not charge him the $3,000 smuggling fee to Los Angeles.

MORALES stated that the foot guide of the group drove the minivan from the house to a gas station. MORALES then drove the minivan from the gas station to the freeway. MORALES noticed that the Interstate 8 westbound Border Patrol Checkpoint was operational and pulled over to the side of the road. MORALES stated that he again switched positions with the foot guide. The foot guide then drove in reverse on the freeway and then turned around and drove eastbound in the westbound lanes, against traffic. MORALES was able to get away from the Border Patrol Agents while everyone else was arrested. MORALES described the foot guide as a young man, wearing light colored slacks and a striped shirt. MORALES additionally described the foot guide as having a distinctive haircut, with some hair that drops down over his face. MORALES stated that if he saw the foot guide, he would recognize him.

MORALES was presented a series of photographs. MORALES identified Jesus Ruben SORIA-Sainz as the foot guide.

**CONTINUATION OF COMPLAINT:**
Jose Luis MORALES-Sevilla
Jesus Ruben SORIA-Sainz



### DEFENNDANT STATEMENT: Jesus Ruben SORIA-Sainz

SORIA was read his Miranda rights and was willing to answer questions without an attorney present. SORIA stated that he entered the United States on February 10, 2008, at approximately 3:00 a.m. by crossing the high steel border fence near the Tecate, California Port of Entry. The group SORIA crossed with consisted of eight people including a foot guide. After crossing the United States/Mexico International Border, SORIA and the group went to an abandoned house where they waited until dawn. After dawn, a minivan came to pick them up. The minivan was the same vehicle that they were in shortly before being apprehended. SORIA stated that the driver of the minivan did not cross the border with the rest of the group. The foot guide told them to get into the minivan. SORIA sat in the back seat directly behind the driver. SORIA stated that no one sat in the front passenger seat next to the driver. SORIA stated that on the freeway, the driver observed that the Border Patrol Checkpoint was operational, then drove in reverse knocking several traffic cones down, turned around, and drove the wrong way. At a certain point, the driver saw a white truck which he thought was a Border Patrol unit and told everyone to get out. Everyone exited the van, but after realizing that the truck was not a Border Patrol unit, they all got back in the van and continued to travel eastbound in the westbound lanes down the freeway.

SORIA has worked as a foot guide approximately 15 times, but has always been caught by the Border Patrol. In return, SORIA was being charged a discounted smuggling fee of $800.00 (U.S.). SORIA stated that foot guides only get charged vehicle costs instead of full smuggling fees. SORIA stated that he only assisted because the foot guide was his friend, and that his only assistance provided was bringing the group across the border to an abandoned house.

SORIA was presented a series of photographs. SORIA identified Jose Luis MORALES-Sevilla as the driver of the minivan.

### MATERIAL WITNESSES STATEMENTS:

**Jorge Armando SOLIS-Lopez, Oscar SALAZAR-Guerrera,** and **Luz MADRIGAL-Blancarte** admitted that they are citizens and nationals of Mexico illegally present in the United States. The material witnesses stated that they were to pay between $2,500.00 and $3,000.00 (U.S.) to be smuggled into the United States. The material witnesses stated that they illegally entered the United States on or about February 10, 2008 by walking across the International Boundary near Tecate, California with the assistance of the defendant Jesus Ruben SORIA-Sainz who acted as the foot guide for the group directing their travel through rural terrain to a building where they would wait for a smuggler in a vehicle to transport them further into the United States.

The Material witnesses were shown a photographic line-up. The material witnesses were able to identify MORALES as the driver of the mini-van, and that he did not cross the border with the group. The material witnesses were also able to identify SORIA as the foot guide.